UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 23-cr-00070-CJN |
| : | |
| JESSE JAMES RUMSON, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE AND OPPOSITION TO
THE UNITED STATES' MOTION FOR PROTECTIVE ORDER**

The United States of America hereby respectfully files this Reply to the Defendant's Response and Opposition to the United States' Motion for Protective Order (the "Response," ECF No. 17). As an initial matter, the protective order at issue has been entered in nearly 1,000 criminal cases stemming from the events at the Capitol Building on January 6, 2021 as an efficient way to encourage widespread dissemination of voluminous discovery. Courts in this District have addressed some of the factual claims in Defendant's Response and, over objection, have held the proposed protective order is "based on good cause" and does not violate a defendant's "right to conduct his defense." *See, e.g.,* ECF No. 103, April 26, 2023 Order, *United States v. Pope*, Case No. 21-cr-00128-RC; *see also United States v. Clark*, Case No. 22-cr-409-APM, February 7, 2023 Hr'g Tr. 14:25-15:8 ("There are a number of countervailing considerations here that . . . are valid and legitimate . . . there is a great deal of sensitive material in the databases, both in terms of security footage . . . [and] personal identifying information . . . [and also, there is] . . . an extraordinary amount of information about the government's investigation into people who have not been arrested, people who are simply subjects, or, importantly, people who are simply with. And so those folks have a substantial privacy interest in ensuring that that information is protected in an appropriate manner and not publicly disseminated.") (Attached hereto for reference

as Attachment A).  For these reasons, the Government respectfully requests the Court enter the proposed protective order.

**REPLY**

1.      Defendant is charged with his criminal activity on January 6, 2021.  On that date, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside, forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.  Scores of individuals entered the U.S. Capitol without authority to be there.  As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.  This event in its entirety is hereinafter referred to as the "Capitol Attack."

2.      The investigation and prosecution of the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence.  Over 1,000 individuals have been charged in connection with the Capitol Attack and the investigation continues.  While most of the cases have been brought against individual defendants, the Government is also investigating conspiratorial activity that occurred prior to and on January 6, 2021.  The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property, assaults on federal and local police officers, firearms offenses, civil

disorder, obstruction of an official proceeding, possession and use of destructive devices, and conspiracy.

3.  Multiple individuals charged or under investigation are: (a) charged or expected to be charged with crimes of violence; (b) associated with anti-government militia organizations and other groups that deny the legitimacy of the United States government; (c) coordinated and/or participated in the violent events which took place at the Capitol; and (d) have made statements indicating an intention to continue in similar violent endeavors until the current administration is overthrown. Dozens of the individuals charged were detained pending trial because a judicial officer determined that the release of such person would not reasonably assure the appearance of the person, as required; would endanger the safety of any other person or the community; and/or would pose a risk of obstruction of justice.

4.  In connection with the above-described cases and on-going investigations, law enforcement and the Government have obtained and continue to obtain voluminous amounts of information and evidence relating to both charged and uncharged individuals which may be discoverable pursuant to Federal Rules of Criminal Procedure 16 and 26.2, Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500.  By way of illustration, as of May 5, 2023, the information and evidence in the Relativity workspace amounts to over 5.03 million files (over 7.77 terabytes of information) and includes, but is not limited to: the results of searches of 796 digital devices and 426 Stored Communications Act accounts; 6,100 FBI FD-302s and related attachments (FD-302s generally consist of memoranda of interviews and other investigative steps); 483 digital recordings of subject interviews; and 149,130 (redacted or anonymous) tip; over 30,000 files including body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies have been shared to the defense

evidence.com video repository. For context, the files provided amount to over nine terabytes of information and would take at least 361 days to view continuously.

5. Many of the above-described materials may contain sensitive information, such as (a) personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure, as well as telephone numbers, email addresses, driver's license numbers, and similar unique identifying information; (b) information regarding the government's confidential sources; (c) information that may jeopardize witness security; (d) contact information for, photographs of, and private conversations with individuals that do not appear to be related to the criminal conduct in this case; (e) medical or mental health information; (f) sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges; and (g) tax returns or tax information. Additional sensitive materials include surveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds, s*ee* Attachments B, C (Declarations of Thomas A. DiBiase, General Counsel for the United States Capitol Police), and repair estimates obtained from the Architect of the Capitol that constitute procurement information.

6. Under the Federal Rules of Criminal Procedure, a court "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" relating to discovery by entering a protective order. Fed. R. Crim. P. 16(d)(1). "The burden of showing 'good cause' is on the party seeking the order[.]" *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (citations and alterations omitted). Once a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order. *See United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (describing the court's discretion as "vast"); *Cordova*, 806 F.3d at 1090 ("[A] 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted

disclosure of the materials which they may be entitled to inspect.'" (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)).

7. "Protective orders vary in range and type 'from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need.'" *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012). "Courts use protective orders . . . to expedite the flow of discovery in cases involving a large amount of sensitive information." *United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018)(internal quotations and citations omitted).

8. Courts also use protective orders when necessary to protect the integrity of on-going investigations. "[W]here public disclosure of certain materials might officially reveal the sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order." *United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013), citing *United States v. Bin Laden*, No. 98–CR–1023, 2001 WL 66393, at *2 (S.D.N.Y. Jan. 25, 2001)(noting that the court adopted a protective order because dissemination of discovery materials would "jeopardize the ongoing Government investigation into the activities of alleged associates of the Defendants").

9. In determining whether to issue a protective order, courts also take into account "the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security.'" *Cordova*, 806 F.3d at 1090 (citations and alterations omitted). "Considering the type of crime charged helps assess the possible threats to the safety and privacy of the victim. Defendants accused of securities fraud or shoplifting, for instance, may not pose as great a danger to victims as those charged with crimes of violence."

*United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019). "A long record of convictions for violent crimes may suggest a substantial danger to the safety of others. Similarly, a history of failures to follow court orders may justify a more restrictive protective order." *Id.*

10. In this case, there is good cause to enter the attached proposed protective order. The entry of the order will facilitate the government's ability to provide voluminous discoverable materials expeditiously, while adequately protecting the United States' legitimate interests. The Order is reasonable – In the event of a dispute, the Order authorizes the government to remove or reduce a sensitivity designation after a discussion with defense counsel. Further, whenever the redaction of specified information will resolve the basis for which a sensitivity designation was applied, the Order provides that the United States will agree to redaction, and such redaction will render the materials at issue no longer subject to the Order. In addition, the Order explicitly exempts materials that (1) are, or later become, part of the public court record, (2) were derived directly from Defendant or that pertain solely to Defendant – e.g., Defendant's own financial records, telephone records, digital device downloads, social media records, electronic communications, arrest records, and statements to law enforcement, or (3) that the defense obtains by means other than discovery. Finally, the Order is clear that the burden for showing the need for any sensitivity designation always remains with the United States.[1]

---

[1] The Defense Response mentions in passing a 1979 D.C. Circuit case holding that a protective order issued under Rule 26 of the Federal Rules of *Civil* Procedure may not be based on "naked speculation;" but, that case is not only irrelevant to this case because there are adequate legal and factual grounds for a protective order, but that opinion has also since been overruled. *See In re Halkin*, 598 F.2d 176, 189, 191 (D.C. Cir. 1979) ("the presumption under the discovery rules is that a [party] may do anything it wants with discovery material, absent a protective order entered 'for good cause shown'" and that such an order is "paradigmatic prior restraint" and requires close scrutiny), *overruled by Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) ("A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. Thus, continued court control over the discovered information does not raise the same specter of government that such control might suggest in other situations.") (internal citations and quotations

11. As noted above, courts in this District have recognized the propriety of the proposed protective order. *See, e.g.,* ECF No. 103, April 26, 2023 Order, *United States v. Pope*, Case No. 21-cr-00128-RC; *see generally United States v. Clark*, Case No. 22-cr-409-APM, February 7, 2023 Hr'g Tr.

## **CONCLUSION**

For these reasons, the protective order should be entered: to expedite the Government's provision of discoverable materials, and to adequately protect the United States' legitimate interests, the Government requests that pursuant to the Court's authority under Fed. R. Crim. P. 16(d)(1), the Court enter the proposed order. ECF No. 15.

          Respectfully submitted,

          MATTHEW M. GRAVES
          UNITED STATES ATTORNEY
          D.C. Bar Number 481052

By:   */s/ Samantha R. Miller*
       SAMANTHA R. MILLER
       Assistant United States Attorney
       New York Bar No. 5342175
       United States Attorney's Office
       For the District of Columbia
       601 D Street, NW 20530
       Samantha.Miller@usdoj.gov

       SEAN P. MCCAULEY
       Assistant United States Attorney
       NY Bar No. 5600523
       United States Attorney's Office
       601 D Street NW
       Washington, DC 20530
       Sean.McCauley@usdoj.gov

---

omitted).