UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA   :

                                                        :

   v.                                     : Case No. 23-cr-00070-CJN

                                                        :

JESSE JAMES RUMSON,       :

                                                        :

   Defendant.                     :

DEFENDANT RUMSON'S MOTION TO SUPPRESS ALL EVIDENCE SEIZED ON FEBRUARY 27, 2021

**Request for Evidentiary and Demonstrative Hearing**

COMES NOW, Defendant, Jesse James Rumson, (hereinafter, "Defendant" or "Rumson"), by and through undersigned counsel, with this Motion to suppress evidence seized unlawfully and unconstitutionally, in violation of the Fourth Amendment, on the morning of February 27, 2021.

**An unconstitutional pre-dawn raid.**

On February, 27, 2021 at 4:26 a.m., the FBI executed a search and arrest warrant of Rumson's and his relatives' residences, which are on a dead-end road. The FBI used flash-bang grenades without cause which frightened Defendant's neighbors. Officers used a no-knock entry and eventually seized Defendant's grandfather's cell phone, Defendant's uncle's tablet, and Defendant's girlfriend's phone. Moreover, the FBI conned the Defendant's brother into signing consent to hand over every phone in the house.

Defendant Rumson was, at the time, charged merely with misdemeanors. Rumson posed no danger to officers or anyone else, was not suspected of being armed or dangerous, and was not suspected of being involved with any illegal drugs or criminal livelihood.

Rumson was cooperative, but FBI agents were combative, intrusive, and violent. Rumson was shown no warrant with any information regarding the purposes of the search. Rumson was

shown only a blank warrant containing the reference: "see attachment A." (No attachments were ever produced.)[1]

FBI then went *next door* and searched Rumson's grandfather's home and seized Mr. Rumson's grandfather's phone. (It is still unclear whether the search warrants, if any, allowed for any search of that property). FBI also seized Rumson's uncle's tablet, and Rumson's girlfriend's phone. FBI even tried to seize the family business phone. However, the owners would not consent. But the FBI then tricked Rumson's brother into signing a consent form to get every phone in the house. Rumson's brother had no authority over the phones of others.

Rumson reports he was given no Miranda warnings until much later and that he did make statements. FBI also reportedly took DNA by force while Rumson was chained to a floor, when Rumson was forcibly swabbed by FBI agent Brian Smith.

## THE FBI'S NO-KNOCK SEARCH OF DEFENDANT RUMSON'S RESIDENCE VIOLATED ESTABLISHED PRECEDENT

As the Supreme Court explained in *Hudson v. Michigan*, 547 U.S. 586 (2006), the requirement that searches and seizures by performed with proper announcement is an ancient component of Fourth Amendment law.

> The common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one. See Wilson v. Arkansas, 514 U. S. 927, 931-932 (1995). Since 1917, when Congress passed the Espionage Act, this traditional protection has been part of federal statutory law, see 40 Stat. 229, and is currently codified at 18 U. S. C. § 3109. We applied that statute in Miller v. United States, 357 U. S. 301 (1958), and again in Sabbath v. United States, 391 U. S. 585 (1968). Finally, in Wilson, we were asked whether the rule was also a command of the Fourth Amendment. Tracing its origins in our English legal heritage, 514 U. S., at 931-936, we concluded that it was.

Id 589.

---

[1] Defendant and defense counsel, as far as we know, have not been provided with any unredacted warrants, attachments, or warrant applications.

Although the Court in Hudson ultimately overturned a suppression order, the Hudson case was far less egregious, and was more reasonable, than the search in Rumson's case. In Rumson's case, the failure of the police to knock and announce before entering, their seizure of the property, and their nighttime execution of the search violated Rumson's rights under the Fourth Amendment. Cf., Jones v. Kirchner, 835 F.3d 74 (D.C. Cir. 2016). This illegal execution was compounded by seizures of devices and items outside the scope of the warrant which clearly belonged to persons other than Rumson. Additionally, officers unconstitutionally compelled statements from Rumson and others without giving Miranda warnings in circumstances where such people were not free to leave.

Accordingly, all evidence seized, and all statements taken, must be suppressed.

**Legal background.**

The Fourth Amendment does not per se prohibit nighttime searches, *Youngbey v. March* , 676 F.3d 1114, 1124 (D.C. Cir. 2012); *Jones v. Kirchner*, 835 F.3d 74 (D.C. Cir. 2016). Nonetheless, the law requires that such loathsome violations of privacy be necessitated by the most stringent standards.

As the Supreme Court wrote in *Cardwell v. Lewis*, 417 U.S. 583, 589 (1974), "[t]he decisions of this Court have time and again underscored the essential purpose of the Fourth Amendment to shield the citizen from unwarranted intrusions into his privacy." *See, also Johnson v. United States*, 333 U.S. 10, 14; *McDonald v. United States*, 335 U.S. 451, 455; *cf. Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245. This purpose is realized by Rule 41 of the Federal Rules of Criminal Procedure, which implements the Fourth Amendment by requiring that an impartial magistrate determine from an affidavit showing probable cause whether information possessed by law-enforcement officers justifies the issuance of a search warrant. Were federal officers free to search without a warrant merely upon probable cause to believe that certain articles were within a home,

the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified. *Jones v. United States*, 357 U.S. 493 (1958).

Rule 41 of the Federal Rules of Criminal Procedure directs that a "warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." FED.R.CRIM.P. 41(c)(1). See also FED.R.CRIM.P. 41(h) (defining "daytime" as "the hours from 6:00 a.m. to 10:00 p.m. according to local time").

The pre-dawn grenade attack and search of Rumson's (and relatives') residences thus violated the plain language of the federal law. All items seized are inadmissible and must be returned to Rumson.

"At common law, prior to the adoption of the Bill of Rights there was a strong aversion to nighttime searches." *United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir.1979). This aversion was then and is now primarily focused on intrusions into the home. *Id*. "Searches of the dwelling house were the special object of this universal condemnation of official intrusion. Night-time search was the evil in its most obnoxious form." *Id.* (quoting *Monroe v. Pape*, 365 U.S. 167, 210 (1960) (Frankfurter, J., concurring and dissenting)).

As the Court noted in *Gibbons*, because of this deeply held aversion to nighttime searches of the home, "[i]n a large number of jurisdictions statutes or court rules restrict the execution of search warrants to daytime hours, absent special circumstances showing the need for a nighttime search." 607 F.2d at 1326.

Nevertheless, "[r]elatively little attention has been given to the matter of ... whether there are special limitations upon nighttime searches flowing from the Fourth Amendment." Wayne R. LaFave, *Search and Seizure* § 4.7(b) at p. 590 (3d ed.1996). The Supreme Court has previously ruled in *Wilson v. Arkansas*, 514 U.S. 927 (1995), that the Fourth Amendment incorporates the

"knock and announce" principle established at common law. And in *Richards*, the Court invalidated a court-made rule which authorized a "no knock" entry for execution of a search warrant in any case involving illegal drugs. The Court held that this blanket exception violated the Fourth Amendment and that the circumstances in each individual case should be evaluated to determine if a no knock entrance was justified. *Richards*, 520 U.S. at 394, 117 S.Ct. 1416. The Supreme Court held that the need for a nighttime search must be shown in each case for a search to survive Fourth Amendment scrutiny. After *Gooding*, the Court held that the "element of a nighttime intrusion is one element in considering the reasonableness of the search." *United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir.1979).

In this case, the government has provided no grounds for the pre-dawn raid whatsoever. This was not a case in which there was any real danger that a suspect might destroy evidence unless searchers had the element of surprise. *Cf. United States ex rel. Boyance v. Myers*, 398 F.2d 896, 899 (3d Cir.1968) (search at night constitutionally unreasonable where no showing of risk that evidence would be removed or destroyed before morning). Nor was this a case in which a narcotics or other drugs might be flushed down toilets or otherwise destroyed. Nor was there any real risk of personal injuries or property damage due to the volatile nature of the chemicals or methamphetamine manufacture. *Cf, United States v. Tucker*, 313 F.3d 1259 (10th Cir. 2002)

## SUPPRESSION IS THE APPROPRIATE REMEDY TO DETER OFFICERS

Moreover, the officers in Rumson's case could not have executed the search warrant in good faith. In United States v. Leon, the Supreme Court considered whether the exclusionary rule should apply to evidence obtained when officers conduct a search in reasonable reliance on an ultimately invalid warrant.

The Court held that the exclusionary rule should not apply where officers acted in good faith. The Court found that the social costs of the exclusionary rule should be balanced with the potential

deterrence benefits, and that the exclusionary rule should apply only when its remedial objectives are best served.

One of the interests to be balanced is the protection of human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident. See, e. g., *Hudson v. Michigan*, 547 U.S. 586, 594 (2006); *McDonald v. United States*, 335 U. S. 451, 460-461 (1948) (Jackson, J., concurring). See also *Sabbath*, 391 U. S., at 589; *Miller*, 357 U. S., at 313, n. 12. Another interest is the protection of property. Breaking a house (as the old cases typically put it) absent an announcement would penalize someone who "`did not know of the process, of which, if he had notice, it is to be presumed that he would obey it . . . .'" Wilson, 514 U. S., at 931-932 (quoting Semayne's Case, 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195-196 (K. B. 1603)). The knock-and-announce rule gives individuals "the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry." Richards, 520 U. S., at 393, n. 5. *See also Banks*, 540 U. S., at 41. And thirdly, the knock-and-announce rule protects those elements of privacy and dignity that can be destroyed by a sudden entrance. It gives residents the "opportunity to prepare themselves for" the entry of the police. Richards, 520 U. S., at 393, n. 5. "The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed." *Ibid*. In other words, it assures the opportunity to collect oneself before answering the door.

In *Youngbey v. March*, officers executed a search warrant at 4:00 a.m. pursuant to the belief that the appellee-suspect had committed a murder with an assault rifle." 676 F.3d 1114, 1118 (D.C. Cir. 2012). The officers executing the search warrant conceded that they neither knocked nor announced their presence before breaking the front window of the defendant-appellee's home and entering his home. *Id.*

Here, the FBI's pre-dawn raid of Rumson's home was objectively unreasonable because the defendant is stable and rational, has no history of violence, had not threatened any violence, was

not suspected of trafficking in illegal narcotics and was not suspected of leading a criminal lifestyle unlike the defendant-appellee in *Youngbey*.

CONCLUSION

Defendant Rumson is entitled to an order suppressing all evidence and statements unlawfully seized on February 27, 2021.

Date: July 16, 2023

Respectfully Submitted,
 */s/ John M. Pierce* John M. Pierce  21550 Oxnard Street 3rd Floor, PMB #172
Woodland Hills, CA 91367 Tel: (213) 400-0725
Email:jpierce@johnpiercelaw.com
Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that, on July 16, 2023, this motion was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

                                              */s/ John M. Pierce*
                                              John M. Pierce