**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**UNITED STATES OF AMERICA**

   **v.**         **Case No. 23-cr-00070-CJN**

**JESSE JAMES RUMSON,**

 **Defendant.**

**DEFENDANT JESSE RUMSON'S RESPONSE AND OPPOSITION TO**
**GOVERNMENT'S OMNIBUS MOTION IN LIMINE (#34)**

COMES NOW the Defendant, Jesse Rumson, by and through his counsel of record John M. Pierce, with this response and opposition to the Government's omnibus motion in limine (ECF 34).

 Essentially the government seeks to deprive Rumson of any right to defend himself.

1. **The "specific location of security cameras in the U.S. Capitol"** is a red herring. While the government paints a preposterous picture of the U.S. Capitol being some type of fortified, high-security institution, everyone knows about the Capitol's CCTV camera locations. In fact, the U.S. House of Representatives is now providing public access to the Jan. 6 CCTV footage. So this issue is moot. Moreover there is a danger that the government is using these types of motions in limine to conceal exculpatory evidence from the defense. And, in fact, Rumson submits that the government has been hiding exculpatory CCTV footage from Rumson in this very case.

2. **On specific Secret Service tactics and emergency operations.** Rumson has a right to put on a complete defense. In several counts, Rumson is accused of entering or committing offenses within a restricted area as determined by Secret Service. Rumson has a right to examine and cross-examine witnesses with relevant information regarding Rumson's defenses.

3. **That his conduct was authorized by former President Trump or other officials.**
Defendant Rumson's conduct in this case was authorized by Trump to some extent.
Rumson listened to Trump, who asked supporters to peacefully and patriotically go to the
Capitol to make his voice heard. This goes directly to Rumson's innocent state of mind.
This evidence is not, strictly speaking, a "public authority defense" or an "entrapment by
estoppel" defense (although Rumson reserves the right to make such defenses). Rather,
this evidence is relevant to show Rumson's state of mind and innocent intent.

4. **That any inaction by law enforcement permitted his conduct**. Law enforcement
perimeters and police lines and announcements are the central facts of this case. It is
fundamental to Rumson's defense that such perimeters, announcements or police lines
were nonexistent, unenforced, or invited entry. Rumson has a right to present a defense.
In fact, police lines and actions are the central facts of trial, and Rumson has a right to
challenge, question, and ask the jury to analyze them in every detail. This evidence is not,
strictly speaking, a "public authority defense" or an "entrapment by estoppel" defense
(although Rumson reserves the right to make such defenses). Rather, this evidence is
relevant to show Rumson's state of mind and innocent intent.

Note that even if Rumson is incorrect regarding his permission to be there or do
what he did, such evidence nonetheless goes to Rumson's innocent state of mind.

5. **That the First Amendment permitted his conduct**. The First Amendment protects the
rights of protestors and demonstrators to protest and demonstrate at the Capitol.
Numerous binding court decisions establish this right. Rumson's conduct on Jan. 6 is
protected by the First Amendment.

6. **On any matter that encourages jury nullification**.  This request is simply too broad and vague for the defense or the Court to address. Under the Constitution, jurors have an absolute power to acquit. Jurors are not required to leave their senses of justice, mercy, or conscience at home. The true purpose of trial by jury, is to act as a check on the power of government.

7. **That they defended himself or others on January 6, 2021.**  Rumson has a right to show that any force he used was justified use of force.

8. **On his prior good acts or relative culpability to other actors on January 6, 2021**. This type of evidence goes directly to Rumson's innocent state of mind, and is admissible.

As support for this vague and wide-ranging motion in limine, the government cites cases which plainly do not support its positions.  For example, *United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) merely upheld a district court's decision to prohibit cross-examination which was beyond the scope of direct examination. *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016), merely addressed limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning.

THE GOVERNMENT'S CASES DO NOT SUPPORT THE TOTALITARIAN WORLDVIEW OF THE PROSECUTION.
Similarly the government's recitation of First Amendment cases does not support the government's broad anti-free-speech propositions.  For example, *Mahoney v. U.S. Marshals Service*, 454 F. Supp 2d 21, 32-33 (D.D.C 2006), stands for the proposition that U.S. Marshals Service may limit certain small areas of sidewalks for the protection of federal and state judges attending mass.  The opinion clearly requires protection for demonstrators to communicate their

ideas to those judges while in close proximity. *Menotti v. City of Seattle*, 409 F.2d 1113, 1129-1130 (9th Cir. 2005) held that an ordinance prohibiting protests against the World Trade Organization in an area with greatest access to conference delegates was permissible so long as communication between protestors and delegates was possible so that protestors could make their protests "<u>visible and audible to delegates</u>, even if not as proximate as the protestors might have liked."

 *Marcavage v. City of New York*, 489 F.3d 98, 105 (2d Cir. 2012) involved a free speech zone imposed at the Republican National Convention in New York City. The Court upheld summary judgment where the regulation was content neutral and the regulated speech was narrowly tailored to serve a

significant governmental interest, and left open ample alternative channels for communication of the information (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) and *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). The government bears the burden of demonstrating that the regulation was constitutional. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816-17 (2000).


 In Rumson's case, however, the government's impositions were ***not* content neutral**. Speech and advocacy seeking to support Trump's "stop the steal" claims have been rebranded and prosecuted as "obstruction," while political advocacy arguing AGAINST Trump's positions go without prosecution (or with minimal prosecution).

 For example, a Democratic D.C. City councilwoman was an active participant on the upper east terrace of the Capitol on January 6—in the midst of many (later prosecuted) J6ers and mere steps away from broken windows.  Yet because the Democrat activist supported Biden and not Trump, she has not been prosecuted.





While the government writes that "No member of the public, including the defendant, had a First Amendment right to engage in protest or speech within that restricted area," the government is only prosecuting those whose protests supported Trump's 2020 election claims. The January 6 speech limitations and prosecutions are not content neutral, and thus are not narrowly tailored.

None of the government's cited cases stand for the broad totalitarian propositions advocated by the government.

CONCLUSION

For all the above stated reasons, the Court should DENY the government's motion in limine.

Dated: December 5, 2023                                     Respectfully Submitted,

_/s/ John M. Pierce_
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

**CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, December 5, 2023, I caused a copy of the

foregoing document to be served on all counsel through the Court's CM/ECF case filing system.


/s/ John M. Pierce
John M. Pierce