UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:23-CR-70 (CJN) |
| | : | |
| JESSE JAMES RUMSON, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS**

The United States of America respectfully submits this opposition to Jesse James Rumson's untimely motion to dismiss the indictment in this case on First Amendment Grounds.[1]

---

[1] The defendant also moves to dismiss "because the charging instrument and documents in this case fail to state a valid federal criminal case, and thus fail to invoke the jurisdiction of this court." ECF 42 at 1. The defendant does not develop this claim beyond this single sentence. Nonetheless, this court has both subject matter and personal jurisdiction. Subject matter jurisdiction in every criminal case is derived from 18 U.S.C. § 3231, which grants the district courts of the United States original jurisdiction "of all the offenses against the laws of the United States." *See United States v. Delgado-Garcia*, 374 F.3d 1337, 1341-42 (D.C. Cir. 2004). A grand jury has charged the defendant with violating federal laws, thus establishing subject matter jurisdiction. As to personal jurisdiction, the only prerequisite for personal jurisdiction is the defendant's presence in the United States. *See*, *e.g.*, *United States v. Burke*, 425 F.3d 400, 408 (7th Cir. 2005) (personal jurisdiction in a federal criminal prosecution is supplied by the defendant's presence in the United States). The defendant was at the Capitol during the instant offense and the Capitol is in the United States; he was therefore in the United States during the offense, thus establishing personal jurisdiction.

Defendant's conclusory statement that the "instrument and documents in this case fail to state an offense," ECF 42 at 1, is similarly underdeveloped. An indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A charging document is sufficient under the Constitution and Federal Rule of Criminal Procedure 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an *indictment* 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And a charging document need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

ECF No. 42. The defendant argues that his conduct was protected by the First Amendment and that the case against him must be dismissed *Id.* at 1. The defendant's claims are not new; motions similar to the one filed here have been rejected by other judges in this district. *See United States v. Baez,* ---F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 98766 (D.D.C. June 2, 2023)*; United States v. Gray,* --- F. Supp. 3d ---, 2023 U.S. Dist. 2023 LEXIS 70431 (D.D.C. January 26, 2023); United States v. Kastner, 21-cr-725 (MAU) (Minute Order 7/21/2023)*.* His claims remain meritless here and this Court should deny them.

I. **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.

The government has set forth the facts surrounding the defendant's participation in the January 6, 2021, riot at the United States Capitol previously. ECF 1-1 (Government's Statement of Facts); ECF 40 at 2-4. In short, at approximately 2:40 p.m., the defendant unlawfully entered the building through the Parliamentary Door. The defendant, wearing a panda headpiece, entered through this door after watching rioters break it down and then jumping over a railing to gain access to the now breached door, making him among the first twenty rioters to enter through this door after it was breached. Inside the door, the defendant charged a line of officers and was briefly detained and searched when he was unable to bypass their police line. The outnumbered officers, unable to maintain custody of the defendant, led him out of the building in handcuffs at 2:52 p.m. *sans* the panda headpiece. Back on the Upper West Terrace, other rioters removed the defendant's handcuffs, and he lingered on the Terrace for another two hours. At approximately 4:20 p.m., as

police officers were attempting to clear the Upper West Terrace, the defendant again charged the line of police officers, this time grabbing the face shield of Prince George's County Police Department Corporal and pushing his head up and backward.

For his participation in the riot, the defendant was charged by criminal Complaint on February 24, 2023, and arrested three days later. On March 8, 2023, a grand jury indicted the defendant with civil disorder, in violation of 18 U.S.C. § 231(a)(3); assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a); knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4); disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); act of physical violence in the Capitol, in violation of 40 U.S.C. § 5104(e)(2)(F); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).

On July 17, 2023, the court set a scheduling order in this case, which required any motions to dismiss the case be filed on or by December 1, 2023. On August 29, 2023, the court issued a new scheduling order which changed the date of the pretrial conference but left the pretrial motions deadline of December 1, 2023, in place. On December 10, 2023—nine days after the pretrial scheduling order's deadline for dispositive motions under Federal Rule of Criminal Procedure 12(a)-(d)—the defendant filed the instant motion.

**II.     LEGAL STANDARD**

"To prevail on an as-applied First Amendment challenge," a defendant "must demonstrate that the statute is unconstitutional as applied to his particular expressive activity." *United States v.*

3

*Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016). The Court must "first assess whether [the defendant's] conduct is, in fact, expressive, and then determine whether the challenged statute 'is related to the suppression of free expression.'" *Id.* (*citing Texas v. Johnson*, 491 U.S. 397, 403, (1989)). If the statute is not related to expression, then the less stringent standard the Supreme Court announced in *United States v. O'Brien*, 391 U.S. 367, 377 (1968)), for regulation of noncommunicative conduct controls. *Caputo*, 201 F. Supp. 3d, at 71. That test has four prongs: first, the challenged regulation must be "within the constitutional power of government"; second, it must "further[ ] an important or substantial government interest"; third, this interest must be "unrelated to the suppression of free expression"; and fourth, the incidental restriction on First Amendment freedoms must be "no greater than is essential to the furtherance of that interest." *Id.* (*citing O'Brien*, 391 U.S., at 377).

### III.   ARGUMENT

#### A. The Defendant's Prosecution Does Not Violate the First Amendment

Although he fails to properly articulate his claim, the defendant argues that the statutes charged are overbroad because, according to him, they somehow seek to punish expression protected under the First Amendment. Substantially similar motions have been filed and denied in other cases. *See, e.g., Baez,* (noting that the motion fails to articulate whether that defendant's First Amendment objection to Section 1752(a) was facial or as applied to her case); *Gray* (noting that the defendant's First Amendment challenge to Section 5104(e)(2)(D) appeared to argue that the statute was facially invalid and as applied to his conduct).

When assessing restrictions that the government seeks to place on the use of its own property, the Supreme Court has been consistent in holding that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United*

*States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). First, one must establish if the government property in question is a public forum—one that "has traditionally been available for public expression"; or a designated public forum—one that the government "has opened for expressive activity by part or all of the public." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). Restrictions on both public and limited public forums are scrutinized using strict scrutiny. *Id.* By contrast, a nonpublic forum is "a space that is not by tradition or designation a forum for public communication." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). For nonpublic forums, restrictions must simply be "reasonable" and "not an effort to suppress expression." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Examples of nonpublic forums include airport terminals, *Int'l Soc'y for Krishna Consciousness*, 505 U.S. at 683; polling places on election day, *Minn. Voters All.*, 138 S. Ct. at 1886; and—notably for this analysis—the inside of the U.S. Capitol. *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.); see also *United States v. Munchel*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 67141, at *20 (D.D.C. 2023); *Nassif*, --- F. Sup. 3d ---, 2022 U.S. Dist. LEXIS 164181, at *4; *United States v. Rhine*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 12308, at *43-44 (D.D.C. 2023); *United States v. Gray,* --- F. Supp. 3d --, 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27 (D.D.C. 2023).[2]

The defendant never identifies which specific statute he is charged with violating allegedly runs afoul of First Amendment speech and assembly protections. His position seems to be that the charges on the indictment constitute an impermissible restriction on speech in a public place. ECF

---

[2] Even if this Court were to engage in a fact dependent First Amendment analysis of the defendant's conduct on January 6, the statutes under which the defendant is charged are constitutional, as further detailed below.

42 at 7-11. The defendant cites caselaw but does little to frame the legal issue or advance his claims. He does not identify whether the challenge is facial or as applied. He does not make a claim as to whether the statute as written is content based or content neutral. He does not ask this Court to apply either strict scrutiny or the reasonableness standard.

In effect, although he fails to properly articulate his claim, the defendant appears to object that the statutes charged are overbroad because they somehow seek to punish expression protected under the First Amendment. Indeed, a motion similar to the one that the defendant has filed in this case has been filed in other January 6 cases where courts have treated the motion as one that makes a challenge based on the alleged overbreadth of the charges. In each case, the motion has been denied. *See Gray,* 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27; *Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-26. Other courts in this district have also rejected overbreadth challenges to the offenses alleged in this case, *see Rhine*, 2023 U.S. Dist. LEXIS 12308, at *29-49 (D.D.C. January 2023) (Lamberth, J.), and to a different statute with a broader prohibition on "any act to obstruct, impede or interfere" with law enforcement in the performance of official duties. 18 U.S.C. § 231(a)(3); *see, e.g., McHugh*, 583 F. Supp. 3d at 28-29; *Nordean*, 579 F. Supp. 3d, at 58.

    1. *The Defendant's Offense Conduct Did Not Involve Constitutionally Protected Expression*

Two charges on the indictment carry specific-intent elements. Under 18 U.S.C. § 1752(a)(2), the government must show that the defendant acted "with intent to impede or disrupt the orderly conduct of Government business or official functions." Similarly, under 40 U.S.C. § 5104(e)(2)(D), the government must show that the defendant acted with "the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress." As Judge Kelly has previously observed, conduct done with the "inten[t] to obstruct Congress's performance of its constitutional duties … is simply not protected by the First Amendment."

6

*Nordean*, 579 F. Supp. 3d, at 41 (D.D.C. 2021); *see also Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-22 (denying motion to dismiss and upholding 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G) under facial First Amendment challenges); *Gray,* 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27 (denying motion to dismiss and holding Section 5104(e)(2)(G) is not unconstitutionally overbroad); *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message."); *see generally United States v. Giampietro*, 475 F. Supp. 3d 779, 792 (M.D. Tenn. 2020) (rejecting First Amendment challenge to 18 U.S.C. § 1519; the statute "regulates conduct, not speech, and the conduct it regulates – destruction of documents with the intent to obstruct a federal investigation – is not expressive") (cleaned up); *Gregory v. City of Chicago*, 394 U.S. 111, 118, (1969) (Black, J., concurring) ("Plainly, however, no mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of spots … for public and other buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals.")

With respect to 18 U.S.C. § 1752(a)(1), Judge Cooper concluded in *Caputo* that the act of entering White House property might carry an expressive component. *See* 201 F. Supp. 3d at 71. So too here, the defendant's act of unlawfully entering the Capitol's restricted area could be "communicative in nature." *Id.* But even accepting that "th[is] charged conduct had some expressive aspect, it lost whatever First Amendment protection it may have had" when the crowd turned violent. *Nordean*, 579 F. Supp. 3d, at 41 (D.D.C. 2021); *see also Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); *United States v. Bingert*, 605 F.

Supp. 3d 111, 130-131(D.D.C. May 25, 2022) (rejecting First Amendment challenge to Section 1752(a)(1) charge on this basis).

The defendant's more targeted attack on 40 U.S.C. § 5104(e)(2)(G), which prohibits knowing and willful demonstrating, parading, and picketing in a Capitol building, also fails. More than 20 years ago, Judge Friedman recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators. There are rules that members of Congress must follow, as well as rules for their constituents." *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 55 (D.D.C. 2000). The defendant, despite including a footnote that is more than a page long in which he reiterates the central issues with a now defunct statute that Judge Friedman outlined in *Bynum*, offers no compelling reason to deviate from that sensible conclusion. A First Amendment challenge involves three steps. First, the speech or conduct at issue must be protected under the First Amendment. *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797 (1985). If so, the analysis then turns to the forum analysis described above. The third step "assess[es] whether the justification for exclusion from the relevant forum satisfies the requisite standard." *Cornelius*, 473 U.S. at 797.

As described above, the defendant's claim fails at the first step because he fails to establish beyond cursory arguments that his case involves speech or conduct protected by the First Amendment. On the one hand, to the extent the defendant seeks to argue that Section 5104(e)(2)(G) contravenes the First Amendment, he must do after trial. *See United States v. Kokinda*, 497 U.S. 720, 724-25 (1990). In *Kokinda*, two defendants were prosecuted for violating a United States Postal Service regulation that prohibited soliciting contributions outside of a post office. *Id.* at 723. As the defendant does here, they advanced a First Amendment claim, namely,

8

that the regulation was an impermissible restriction in a public forum—the sidewalk outside the post office. *Id.* at 724. But they pressed that claim *after trial* in which the presentation of evidence established precisely the defendants' conduct, where it took place, and relevant facts about the sidewalk outside the post office. *Id.* at 724-25. Because, by contrast, the defendant's First Amendment challenge is premature, this Court should "go no further." *Cornelius*, 473 U.S. at 797.

In any event, the defendant's apparent First Amendment claim—that the Capitol building should be considered a public forum—lacks merit. The defendant cites no precedent in which a building comparable in form or function to the U.S. Capitol has been found to be a public forum. As discussed above, a nonpublic forum is one to which the government does not "grant general access." *Id*. at 803. The defendant's characterization of his unfettered right to enter the Capitol building does not undermine the government's "legitimate interest in ensuring that the activities of Congress proceed without disruption." *Bynum*, 93 F. Supp. 2d at 56. Moreover, the Court in *Bynam* court explicitly concluded that 40 U.S.C. § 5104(e)(2)(G), is viewpoint neutral and a reasonable regulation of a nonpublic forum (i.e., the Capitol). Congress, in 40 U.S.C. § 5104(e)(2)(G) reasonably took aim at conduct that disrupts its orderly business, *Bynum*, 93 F. Supp. 2d at 58, and did so in a viewpoint neutral manner. At least two other courts in this district have concurred with the court's analysis in Bynum. *See United States v. Nassif*, 21-CR-421 (JDB), ECF No. 42, at 3-11 (Bates, J.) (denying defendant's motion to dismiss 40 U.S.C. § 5104(e)(2)(G) count on First Amendment grounds); *United States v. Seitz*, 21-CR-279 (DLF), ECF No. 51 (Friedrich, J.) (same).

The same analysis applies to 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D). First, 18 U.S.C. § 1752(a) prohibits certain conduct inside a restricted area—restricted given the presence of a United States Secret Service protectee—without lawful authority.

9

For reasons like those discussed above and in *Bynum*, the government is within its rights to maintain restricted areas as nonpublic fora. Moreover, neither Section 1752(a)(1) nor Section 1752(a)(2) target speech: the former is a trespass prohibition, while the latter covers disorderly and disruptive conduct. Similarly, Section 5104(e)(2)(D) as charged here covers only disorderly and disruptive conduct in the nonpublic Capitol building.

Generally, the defendant seems to be asserting that any closure of the Capitol grounds at any time is unlawful. However, the cases that he cites in support of this lawless assertion do not stand for the propositions that he contends. The defendant's reliance on *Adderley v. Florida*, 385 U.S. 39 (1966), is misplaced. In *Adderley*, the Court did remark that protesting at a state capitol is different in character from protesting at a jail because "[t]raditionally, state capitol grounds are open to the public." *Id.* at 41. The context in which the Court made this observation, though, is of great import. In asserting that "traditionally capitols grounds are open to the public," the Court was extrapolating upon its decision in *Edwards v. South Carolina*, 372 U.S. 229 (1963). In that case, the Court struck down a statute that was "so broad and all-embracing as to jeopardize speech, press, assembly, and petition[.]" *Id.* at 42 (citing *Edwards*, 372 U.S. at 237). It was this same doctrine of overbreadth, the *Adderley* Court noted, that rendered Louisiana's breach-of-the-peace statute unconstitutional. *Id.* (citing *Cox v. Louisana*, 379 U.S. 536, 551-552 (1965)). The Court's statement about capitols being traditional public fora was not, as the defendant asserts, a holding that *any* regulation that limits First Amendment activities on any capitol ground *ever* is unconstitutional. It was, instead, a truism that supported the holding from *Edwards* that a statute or regulation that was so overbroad and all-embracing such that it prohibited, in effect, *any* First Amendment activity on capitol grounds at *any* time is unconstitutional. *Adderley*, 385 U.S. at 42.

The defendant's citation to *Community for Creative Non-Violence v. Kerrigan*, 865 F.2d 382 (1989), is also inapposite. In that case, the plaintiffs challenged a Capitol Police regulation that prohibited permits to protest being issued for more than seven consecutive days or for more than twenty-four consecutive hours. The defendant asserts that the holding of *Kerrigan* is that "there is no doubt that the Capitol Grounds are a public forum." ECF 42 at 7. That is not the holding of *Kerrigan*. The holding of *Kerrigan* is that the Capitol Police regulation at issue in the case was "narrowly tailored to meet the significant governmental interest in maintaining control over Capitol Grounds." *Kerrigan*, 865 F.2d at 391. This holding is consistent with the holding in *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp 575 (1972), another case upon which the defendant relies.[3] In that case, a special panel of the District Court for the District of Columbia did strike down a Capitol Police regulation that prohibited protesting but, in doing so, observed that the 90-year-old statute at issue functioned as "a blanket prohibition of all assemblies, no matter how peaceful and orderly, anywhere on the Capitol Grounds" and was "flatly prohibitory." *Id.* at 585-586.

The defendant's assertions of law are unfounded. The government has a significant interest "in maintaining control over Capitol Grounds." *Kerrigan*, 865 F.2d at 391. The government may exclude from the Capitol "any group which is noisy, violent, armed, or disorderly in behavior, any group which has a purpose to interfere with the processes of Congress, any member of Congress, congressional employee, visitor or tourist; and any group which damages any part of the building, shrubbery, or plant life." *Jeanette Rankin Brigade*, 342 F. Supp at 580. On January 6, 2021, the

---

[3] The Defendant asserts that *Jeanette Rankin Brigade* held that "Capitol Grounds are 'an area to which access cannot be denied broadly or absolutely.'" ECF 42 at 7. This is not the holding of *Jeanette Rankin Brigade*. It is a quote to *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308 (1967), which appears within *Jeanette Rankin Brigade*.

government closed a limited area immediately surrounding the Capitol for a limited time and did so in such a way that anyone who wished to protest the proceedings inside of the Capitol could still do so within sight and earshot of the building. The closed area was marked with signs, fences, and gates around the entire area of the Capitol, along with an increasingly heavy police presence guarding the building. The defendant's knowledge of these signs and other indicators that he was in a closed area is a matter of fact to be decided by the factfinder.[4] This limited closure was not so overbroad that it prohibited all First Amendment at any time in the vicinity of the Capitol. *Adderley*, 385 U.S. at 42 (citing *Edwards*, 385 U.S. 39); *see also* ECF 82 at 5-6. Therefore, the closure of the Capitol Grounds on January 6, 2021, does not violate the First Amendment. *Ibid.*

   2. *In the Alternative, The Defendant's Prosecution Under the Charged Statutes Comports With the First Amendment.*

Even assuming *arguendo* that some aspect of the defendant's conduct constitutes expressive First Amendment activity, the government's decision to prosecute him under the charged statutes passes muster under *O'Brien*. *See, e.g., Johnson*, 491 U.S., at 403 (1989), *citing O'Brien*, 391 U.S., at 377 (1968).

First, the four violations of law charged here are "within the constitutional power of the government." *O'Brien*, 391 U.S. at 377. The defendant does not (and cannot) contest the government's right to prohibit participating in a riot, assaulting police officers in connection with that riot, trespassing, disorderly conduct, physical obstructions on its property.

---

[4] The specific area of the Upper West Terrace where the Defendant ultimately assaulted law enforcement officers is a sensitive area that had been closed for twenty years for security reasons because, as happened when that area was breach on January 6, it provides direct access to the Capitol through the Senate Wing Door and Parliamentarian Door. The entire West Front of the Capitol was also closed that day, as it had been since the preceding August, for construction of the inauguration stage. Thus, in this case, the Capitol Police had closed the specific area at issue in this case thrice over, and each time had narrowly tailored the closure in such a way that people could lawfully exercise their First Amendment rights in the vicinity of the Capitol.

Second, "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376 (cleaned up). As Judge Kelly has noted, "[t]he Government has a weighty interest in protecting Congress's ability to function without 'corrupt' interference." *Nordean*, 579 F. Supp. 3d, at 42 (D.D.C. 2021); *see also Caputo*, 201 F. Supp. 3d, at 72 (noting "the Government's profound interest in protecting the White House complex, the President, and the functionality of the executive branch"). That interest reached its apex on January 6 when "Congress was convened in Joint Session to undertake one of its most solemn and constitutional duties." *Nordean*, 579 F. Supp. 3d, at 42 (D.D.C. 2021).

Third, that interest is "unrelated to the suppression of free expression." *O'Brien*, 391 U.S., at 377. None of the crimes for which the defendant has been indicted turn on the content of his potentially expressive actions. Rather, the charged statutes ensure the protection and normal functioning of the Congress. *See Rhine*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 12308, at *18-50 (D.D.C. January 2023); *Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-22, *Gray,* 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27.

Fourth, applying the charged statutes to the defendant's conduct imposes no more than an "incidental limitation[] on First Amendment freedoms." *O'Brien*, 391 U.S., at 376. As explained above, the statutes charged in the Indictment predominately (if not exclusively) regulate unprotected activities. And the statutes "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Quite obviously, there were many avenues for [the defendant] to express [his] opinions about the 2020 presidential election, or [his] views about how Congress should perform its constitutional duties on January 6." *Nordean*, 579 F. Supp. 3d, at 43 (D.D.C. 2021), but none of them involved breaching the

13

Capitol through a shattered door and then assaulting a police officer when he and other rioters were instructed to leave the Upper West Terrace.

### 3. *The Defendant's Conduct Was Not Protected by the First Amendment.*

As previously stated, the instant motion is substantially similar to ones that have been filed in other cases involving the January 6 riot at the Capitol. However, this case has a crucial distinction from other cases where this motion has been filed: the defendant has been indicted for civil disorder and assaulting a police officer inside of the restricted area that the Capitol Police had established on January 6, 2021. This sets his conduct apart from other defendants who have been charged with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). In spite of this fact, the defendant broadly contends that 1) the Capitol Police could not restricted access to the grounds that day, ECF 42 at 9-10, and 2) that all of his conduct within the restricted perimeter was protected by the First Amendment, ECF 42 at 13-14.

First, as outlined in the government's global omnibus motion to preclude improper defense arguments, ECF 34 at 12-16, the Capitol Police lawfully closed the grounds to the Capitol that day. *See Mahoney v. U.S. Marshals Service*, 454 F. Supp 2d 21, 32-33 (D.D.C 2006) (U.S. Marshals Service did not violate First Amendment by restricting access to sidewalk in front of St. Matthew's Cathedral for Red Mass, even though sidewalk was a traditional public forum); *Menotti v. City of Seattle*, 409 F.2d 1113, 1129-1130 (9th Cir. 2005) (finding that an emergency order to close a core area of downtown Seattle to protests during World Trade Organization conference was constitutional in part because its purpose was to maintain and restore civic order); *Marcavage v. City of New York*, 489 F.3d 98, 105 (2d Cir. 2012) ("[T]here can be no doubting the substantial government interest in the maintenance of security at political conventions."); *Citizens for Peace in Space v. City of Colorado Springs*, 477 F.2d 1212, 1222 (10th Cir. 2007) ("In this case, there

14

can be no doubt that the City's interest in providing security to a gathering of defense officials is of the highest order'); *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) (upholding a street closure plan around the Democratic National Convention that made it nearly impossible for groups wishing to demonstrate to do so within sight and sound of delegates).

Second, the defendant engaged in violent assaultive conduct inside of the restricted perimeter. The First Amendment does not—under any construction—protect a right to engage in violence or assault police. *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("Of course, where demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); *see also O'Brien*, 391 U.S. at 376 (1968) ("[W]hen speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."). "Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *United States v. Gregg*, 226 F.3d 253, 267-268 (3d Cir. 2000). Even conduct which is not outright violent but which physically "obstructs or unreasonably interferes" with official functions of government business loses its First Amendment protection. *Cameron v. Johnson*, 390 U.S. 611, 617 (1968) (finding that a picket demonstration which physically blocked ingress or egress from a courthouse was not protected by the First Amendment); *see also Cox v. Louisiana*, 379 U.S. 536, 555 (1965) (physical "cordon" of a street or a public or private building by demonstrators who refused to let anyone pass if they "did not agree to listen to their exhortations."). That he traveled to Washington that day to participate in lawful protest activities or that he even perhaps lawfully exercised his right to free speech and protest earlier in the day is of no moment considering the assaultive conduct he engaged in on the Upper West Terrace. *Gregg*, 226 F.3d at 267-268; *see also Grayned*, 408 U.S. at 116

15

### B. The Defendant's Motion to Dismiss is Untimely Under Rule 12

On July 17, 2023, the Court, upon consent of both parties, issued a scheduling order. ECF 29. On August 29, 2023, the court issued an amended scheduling order which only changed the date of the pretrial conference. ECF 31. In both scheduling orders, ¶1 established identical deadlines for filing motions in this case:

> The parties shall file any pretrial motions pursuant (including motions in limine and motions to dismiss the indictment or other motions to exclude evidence) by December 1, 2023. Oppositions to any such motions shall be filed by December 8, 2023. Any reply shall be filed by December 13, 2023.

ECF 29 & 31.

The defendant filed the instant Motion to Dismiss on First Amendment Grounds on December 10, 2023. This dispositive pretrial motion was filed nine days after the pretrial scheduling order's December 1 deadline.

Rule 12 of the Federal Rules of Criminal Procedure provides that certain defenses, objections, and requests, including motions for dismissal, "must be raised by pretrial motion if the basis for the motion is then reasonably available." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). Rule 12 also permits the Court to set a deadline for the parties to make pretrial motions. *See* Fed. R. Crim. P. 12(c)(1). If a party does not meet the Court's deadline for making a pretrial motion, the motion is to be treated as untimely. *See* Fed. R. Crim. P. 12(c)(3), *see also United States v. Gerace*, 19-cr-0277, 2022 U.S. Dist. LEXIS 237678 (W.D.N.Y. December 19, 2022) (discussing untimely Rule 12 motions under pretrial scheduling orders). However, "a court may consider the [untimely motion] if the party shows good cause" for the late filing. *Id.* Generally, a party can demonstrate "good cause" only if they can show some reason why they could not have challenged the defect in the time required by Rule 12. *United States v. Griffith*, 21-cr-244-CKK, --- F. Sup. 3d ---, 2023

U.S. Dist. LEXIS 79302 (D.D.C. May 5, 2023) (denying Rule 12 motion challenging a defect in the indictment as untimely), *citing United States v. Doost*, 3 F.4th 432, 437 (D.C. Cir. 2021).

The defendant had ample notice of the Rule 12 pretrial dispositive motions deadline. The defendant did not request an extension of time to file the motion to dismiss, nor has he provided the Court with "good cause" under Federal Rule of Criminal Procedure 12(c)(3) that would justify why his motion to dismiss the indictment on First Amendment grounds could not have been raised until December 10th. Based on the above, the Court should deny the motion as untimely.

### IV. CONCLUSION

For these reasons, the government respectfully requests that the Court deny the Defendant's motion to dismiss.

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

*/s/ Sean P. McCauley*
SEAN P. McCAULEY
Assistant United States Attorney
NY Bar No. 5600523
United States Attorney's Office
601 D Street NW
Washington, DC 20530
Sean.McCauley@usdoj.gov