UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESSE JAMES RUMSON,<br><br>**Defendant.** | Case No. 1:23-cr-70 (CJN) |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO COMPEL**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's demand, ECF 52, to compel production of materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Specifically, the defendant moves to compel the disclosure of (1) the "identities of all undercover agents and confidential human sources who were present in the area relevant to the defendant's case;" (2) "all unreleased footage from January 6, 2021, which may contain exculpatory evidence"; and (3) "identities of all antifa-affiliated activists who were present" in the same area as the defendant.

The government is committed to ensuring that exculpatory materials are produced in a comprehensive, accessible, and useable format to the defendant. However, the materials identified in the defendant's motion to compel are either immaterial, duplicative of already provided discovery, or fall outside the scope of Rule 16.

**LEGAL PRINCIPLES REGARDING *BRADY* AND RULE 16**

The defendant seeks to compel evidence under *Brady* and its progeny. "The government's *Brady* obligations are separate and distinct from its obligations under Rule 16 of the Federal Rules of Criminal Procedure." *United States v. Flynn*, 411 F. Supp. 3d 15, 28 (D.D.C. 2019). The government has "an affirmative duty to disclose exculpatory evidence to the defense, even if no request has been made by the accused." *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir.

2017). In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Badley*, 473 U.S. 667, 676 (1985). However, "it takes more than the adverse party's conclusory suspicions to impel the adjudicator to delve behind the government's representation that it has conducted a *Brady* review and found nothing." *Landry v. F.D.I.C.*, 204 F.2d 1125, 1137 (D.C. Cir. 2000). Similarly, "[m]ere speculation" on the part of a defendant is insufficient to sustain a Brady claim. *United States v. Mason*, 951 F.3d 567, 573 (D.C. Cir. 2020) (quoting *United States v. Horton*, 756 F.3d 569, 575 (8th Cir. 2014)). Moreover, no *Brady* violation can be established unless "the defendant is able to raise at least a colorable claim that the disputed material contained evidence favorable to him and material to his claim of innocence or to the applicable punishment." *United States v. Nichols et al.*, 21-cr-117, ECF 266 at 9 (quoting *United States v. Williams-Davis*, 90 F.3d 490, 514 (D.C. Cir. 1996)) (cleaned up).

Federal Rule of Criminal Procedure 16,[1] on the other hand, mandates the disclosure of certain enumerated items that are material to the preparation of a defense. *Flynn*, 411 F. Supp. 3d at 28. Under Rule 16, the government must produce documents and objects, including "photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items," so long as two requirements are met. Fed. R. Crim. P. 16(a)(1)(E).

First, documents and objects enumerated in the rule must be "within the government's possession, custody, or control." *Id.* To be within the government's "possession, custody, or

---

[1] The defendant does not move to compel production under Rule 16. Nonetheless, an analysis of the government's obligations under Rule 16 is an important consideration for the demands in the defendant's motion.

control," the materials must be within the prosecutor's direct control or "maintained by other components of the government which are 'closely aligned with the prosecution.'" *United States v. Libby*, 429 F. Supp. 2d 1, 6 (D.D.C. 2006) (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). This limitation ensures that courts do not adopt a "monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (applying a narrow view of government control of materials in the *Brady* context) (internal quotation and citation omitted).[2]

Second, documents enumerated in the rule must be: (1) material to preparing the defense, (2) intended to be used in the government's case-in-chief at trial, or (3) obtained from or belonging to the defendant. Fed. R. Crim. P. 16(a)(1)(E). To prove materiality under the first factor, defendant must make a preliminary showing that the information sought is in fact material by demonstrating that the document or object would "enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996). The defense must also show that the discovery sought would refute the government's case in chief. *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000). The document or object must bear more than "some abstract relationship to the issues in the case." *Libby*, 429 F. Supp. 2d at 7.

Courts impose such limits on defendants because the rule does not require a "broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." *Jencks v. United States*, 353 U.S. 657, 667 (1957) (quoting *Gordon v. United States*, 344 U.S. 414, 419 (1953)); *see also Nichols*, 21-cr-117 (RCL), ECF 266 at 27

---

[2] The government is also aware of, and intends to fully comply with, its *ongoing* discovery obligations. To the extent the government states that an otherwise discoverable document or item is not within its possession, custody, or control as of this filing and then later obtains it, the government will produce it.

(Finding that a defendant's demands under Rule 16 relating to "undercover agents" in the crowd on January 6, 2021, was "less of a fishing expedition, and more like the hunt for the Loch Ness Monster."). Moreover, Rule 16 does not convey an entitlement to discovery that is duplicative of documents and objects already provided. *See*, *e.g.*, *United States v. Sutton*, 21-cr-598 (PLF), 2022 WL 3134449, at *6 (D.D.C. Aug. 5, 2022); *United States v. Abu-Jihaad*, 2008 WL 346121, at *5 (D. Conn. Feb. 4, 2008).

## ARGUMENT

**I.     Discovery related to certain named and unnamed individuals.**

The defendant demands production of materials related to two specific individuals and an undefined group of people whom he describes as "individuals suspected of being confidential government sources, undercover agents or protected Antifa assets." ECF 52 at 3. The defendant offers no basis for these suspicions.

The government is fully aware of its obligation to disclose information that is material and favorable to the defendant. *Brady*, 373 U.S. 83; *Giglio v. United States*, 405 U.S. 150 (1972). The government is further aware that information about informants "must be disclosed whenever the informer's testimony may be relevant and helpful to the accused's defense." *United States. v. Gaston*, 357 F.2d 77, 84 (D.C. Cir. 2004) (quoting *Roviaro v. United States*, 353 U.S. 53, 61-62 (1953)).

The defendant's motion identifies by name two individuals, Landon Copeland and Hunter Ehmke, whom he alleges were working for the government on January 6, 2021. Landon Copeland was prosecuted for offenses committed at the United States Capitol on January 6, 2021. *See* 21-cr-507 (APM). On May 8, 2023, Copeland was sentenced to three years of incarceration and thirty-six months of supervised release. Since his sentencing, Copeland appears to have described himself as a member of Antifa. ECF 52 at 5. Copeland made no such claim during the pendency of his

case, and the government has no evidence from its prosecution of Copeland to support his claim; his supposed Antifa membership appears to have been wholly made up, by him, since his sentencing. Hunter Ehmke was also prosecuted for his participation in the events at the United States Capitol. *See* 21-cr-29 (TSC). On May 13, 2022, Ehmke was sentenced to four months incarceration and three years of supervised release. The government has complied and will continue to comply with its discovery obligations concerning these two individuals. The defendant claims that Ehmke "was reportedly a pro-government extremist affiliated with Antifa," ECF 52 at 2, but provides no support for this claim.[3]

The defendant also alleges, without support, that there were "several mysterious individuals commit[ing] property destruction" and that he tried to prevent it. ECF 52 at 4. The defendant does not identify or describe these individuals, nor does he provide any description of the time and location where Rumson encountered them. The defendant's omission about the identities or descriptions of these individuals is particularly telling considering the tremendous amount of discovery that has been provided to the defendant in this case in both global[4] and case-

---

[3] The defendant should not make such careless accusations against another person, by name, which harm their reputation and expose them and their families to harassment and threats. *See* Nichols, 21-cr-117 (RCL), ECF 266 at 19 ("It is regrettable that [the defendant] relies on such little evidence to make so many serious allegations about real people, who might as a result face real reputational and safety concerns.").

[4] As of January 26, 2024, over 7.96 million files (10.12 terabytes of information) have been provided to the defense Relativity workspace. These files include (but are not limited to) the results of searches of 836 digital devices and 454 Stored Communications Act accounts; 11,990 FBI FD-302s and 30,333 related attachments (FD- 302s generally consist of memoranda of interviews and other investigative steps); 528 digital recordings of subject interviews; and 210,537 (redacted or anonymous) tips. Over 32,000 files that include body-worn and hand-held camera footage from five law enforcement agencies and surveillance-camera footage from three law enforcement agencies have been shared to the defense evidence.com video repositories. *All* of this information is accessible to the defense, as well as camera maps and additional tools that assist any defense counsel with conducting their own searches for information that they might believe is relevant.

specific[5] discovery. Absent more specific information about these individuals, the government can make no further disclosures. The defendant's demands for information fail because "his allegations are baseless, heavy on conjecture but light on facts." *Nichols*, 21-cr-117 (RCL), ECF 266 at 19.

Finally, the defendant discusses plainclothes officers who were among the crowd. ECF 52 at 2. The government disclosed the information that it has in its possession regarding these officers, including their body worn cameras, on April 6, 2023. And notably, the defendant does not claim that he was anywhere near these officers, nor that he interacted with them in any way,

Whether under *Brady* or under Rule 16, the defendant's vague demands fail. He has failed to show how the information sought is, in fact, material by demonstrating that it would "enable[] the defendant significantly to alter the quantum of proof in his favor." *Graham*, 83 F.3d at 1474. He has similarly failed to show how it would refute the government's case in chief. *Armstrong*, 517 U.S. at 463; *Rashed*, 234 F.3d at 1285. In some respects, he has failed to show that any of the materials he now seeks are even in the government's possession, Fed. R. Crim. P. 16(a)(1)(E) and *Libby*, 429 F. Supp. 2d at 6, and, in others, he has failed to show how any of the materials that he now seeks would not be duplicative of materials already provided to him. *Sutton*, 2022 WL 3134449 at *6. The defendant has thus failed to establish a single prong of Rule 16 or *Brady*.

II.  **The defendant's demand for additional video footage is conclusory and speculative.**

As part of his requested relief, the defendant demands that this court order the government to "provide all unreleased footage from January 6, 2021, which may contain exculpatory evidence vital the defendant's defense." The defendant offers no information about what video evidence he

---

[5] The government has provided the defendant with all the video footage that, at this time, it knows to show the defendant. The government has also provided the defendant with all interior and exterior CCV footage of the Senate Wing Door from between the hours of approximately 2 p.m. and 4:30 p.m., on January 6, 2021, which was the period that the defendant was present on the Upper West Terrace.

seeks, whether that be CCV footage, body worn camera, or some other video footage entirely. He further fails to identify any reason why he believes that footage may be exculpatory. Importantly, the defendant does not explain why this unspecified footage will negate some aspect of his crime.

The government has provided the defendant with all the video evidence that it believes is relevant to the defendant's case. The defendant has long had access to searchable databases containing nearly all CCV footage from the Capitol grounds, the building's interior, and the Capitol Visitor Center from January 6, 2021, between 12:00 p.m. and 8:00 p.m., as well as body worn camera footage from the Metropolitan Police Department. He also has been provided maps depicting the locations of CCV cameras. The defendant, therefore, has the means at his disposal to make requests for footage, with specificity, that might have some relevance to his case. Instead, he makes demands based on conclusory statements about individuals that may appear on some unspecified footage somewhere.

"[I]t takes more than the adverse party's conclusory suspicions to impel the adjudicator to delve behind the government's representation that it has conducted a *Brady* review and found nothing." *Landry*, 204 F.2d at 1137. The defendant's demand amounts to nothing more than just the type of "conclusory suspicion," *id.*, and "mere speculation," *Mason*, 951 F.3d at 573, that is insufficient to support a claim under *Brady*. See *Nichols*, 21-cr-117 (RCL), ECF 226 ("[The defendant's] theory is nothing but a 'shot in the dark.'") (quoting *United States v. Navarro*, 737 F.2d 625, 631 (7th Cir. 1984)). Absent more information, his motion to compel must fail. *Nichols*, 21-cr-117 (RCL), ECF 266 at 9.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to compel discovery should be denied.

                                        Respectfully submitted,
                                        MATTHEW M. GRAVES
                                        United States Attorney
                                        D.C. Bar No. 481052

By:      */s/ Samantha R. Miller*
            SAMANTHA R. MILLER
            Assistant United States Attorney
            New York Bar No. 5342175
            United States Attorney's Office
            For the District of Columbia
            601 D Street, NW 20530
            Samantha.Miller@usdoj.gov

            */s/ Sean P. McCauley*
            SEAN P. McCAULEY
            Assistant United States Attorney
            NY Bar No. 5600523
            United States Attorney's Office
            601 D Street NW
            Washington, DC 20530
            Sean.McCauley@usdoj.gov